**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASMINE LERNER, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br> v.<br><br>CVS HEALTH CORPORATION,<br><br>        Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Jasmine Lerner ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant CVS Health Corporation ("CVS" or "Defendant") for the manufacture, marketing, and sale of CVS After-sun Aloe Vera Soothing Spray and After-Sun Aloe Vera Moisturizing Gel (the "Products") that are contaminated with the carcinogenic impurity benzene. Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to Plaintiff herself, which are based on personal knowledge.

## FACTS COMMON TO ALL CLAIMS

1. This is a class action lawsuit against Defendant for the manufacture and sale of the Products, which were defective because they contain benzene, a carcinogenic chemical impurity that has been linked to leukemia and other cancers. The Products are not designed to contain benzene (nor is the presence of benzene disclosed in any way on the Products' labels), and in fact no amount of benzene is acceptable in the Products. However, Defendant's Products not only contained benzene, but many contained benzene at levels far exceeding acceptable limits set by the United States Food & Drug Administration ("FDA"), including even emergency

1

interim limits.  The presence of benzene in the Products renders them unsafe and worthless, and unsuitable for their principal and intended purpose.

2.      Benzene is a component of crude oil, gasoline, and cigarette smoke, and is one of the elementary petrochemicals.  The Department of Health and Human Services has determined that benzene causes cancer in humans.  Likewise, the FDA lists benzene as a "Class 1 solvent" that "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity."  The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound, defining it as "carcinogenic to humans."[1] In 2011, the United States Environmental Protection Agency introduced regulations that lowered limits on benzene in gasoline due to its carcinogenic nature.[2] California's Proposition 65 Fact Sheet for benzene states, "[b]enzene is on the Proposition 65 list because it can cause cancer and birth defects or other reproductive harm. Exposure to benzene can cause leukemia. Exposure to benzene during pregnancy may affect development of the child. It may also harm the male reproductive system."[3]

3.      According to the American Cancer Society:

IARC classifies benzene as "carcinogenic to humans," based on sufficient evidence that benzene causes acute myeloid leukemia (AML). IARC also notes that benzene exposure has been linked with acute lymphocytic leukemia (ALL), chronic lymphocytic leukemia (CLL), multiple myeloma, and non-Hodgkin lymphoma.[4]

---

[1] https://monographs.iarc.who.int/list-of-classifications

[2] https://www.epa.gov/gasoline-standards/gasoline-mobile-source-air-toxics

[3] https://www.p65warnings.ca.gov/fact-sheets/benzene

[4] American Cancer Society. Benzene and Cancer Risk (January 5, 2016) (https://www.cancer.org/cancer/cancer-causes/benzene.html)

4.      According to the National Institute for Occupational Safety and Health, humans can become exposed to benzene through "inhalation, skin absorption, ingestion, skin and/or eye contact." [5]

5.      While investigating the carcinogenic potential of active ingredients in sun care products, Valisure, an online pharmacy registered with the FDA, recently detected high levels of benzene, a known human carcinogen, in the Products.

6.      Valisure tested Defendant's Products listed below using a sophisticated gas chromatography flame ionization test modified to follow FDA guidance for impurities detection. Valisure's testing revealed quantities of benzene in the Products in excess of the "FDA concentration limit of 2 parts per million (ppm)." [6]

7.      Defendant's Products contained among the highest concentrations of benzene of all of the products tested by Valisure.  For example, Defendant's After-Sun Aloe Vera Soothing Spray, Lot No. 8140449A, contained between 4.55 and 4.71 ppm of benzene, over double the interim limit of 2 ppm set by the FDA.[7]  Another tested lot, 4111849A, contained between 3.58 and 3.93 ppm of benzene, also well above FDA interim limits.[8]  The gel Product and an additional tested lot of the spray Product also tested positive for benzene.[9]

---

[5] National Institute for Occupational Safety and Health (NIOSH), Benzene, https://www.cdc.gov/niosh/npg/npgd0049.html.

[6] Valisure, Valisure Citizen Petition on Benzene in Sunscreen and After-sun Care products, May 24, 2021 ("Valisure Petition"), https://www.valisure.com/blog/valisure-news/valisure-detects-benzene-in-sunscreen/, at 1.

[7] *Id.*, at 12.

[8] *Id.*

[9] *Id.* at 13.

8.      Following the Valisure petition, on or around July 15, 2021, Defendant announced it was halting the sale of the Products "found to contain the carcinogen benzene."[10]

9.      Benzene is not listed as an ingredient on the Products' labels.  Defendant does not disclose the actual or potential presence of benzene in its Products at all on the Product's labeling, or in any advertising or website promoting the Product.

10.     The Products are regulated by the FDA as cosmetics pursuant to the federal Food, Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, as well as analogous state statutes and regulations.  The FDCA "prohibits the distribution of cosmetics which are adulterated or misbranded.  A cosmetic is considered adulterated **if it contains a substance which may make the product harmful to consumers under customary conditions of use**."[11]  21 U.S.C. § 361.

11.     Further, as cosmetics regulated by the FDA, the Products must "bear a warning statement whenever necessary or appropriate to prevent a health hazard that may be associated with the product."  21 C.F.R. § 740.1(a).

12.     Defendant disregarded the laws and regulations outlined above.  As a manufacturer, distributor, and seller of a cosmetics product, Defendant had and has a duty to ensure that its Products did not contain excessive (or any) levels of benzene, including through regular testing.  But based on Valisure's testing results set forth above, Defendant made no reasonable effort to test its Products for benzene or other impurities.  Nor did it disclose to Plaintiff or any other consumers in any product advertising, labeling, packaging, or marketing

---

[10] https://www.bloomberg.com/news/articles/2021-07-15/cvs-halts-sales-of-two-of-its-store-brand-sun-care-products#:~:text=CVS%20Health%20Corp.%20has%20halted,also%20contaminated%20with%20the%20chemical. (last visited 1/26/22).

[11] https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/summary-cosmetics-labeling-requirements#Adulterated (emphasis added).

that its Products contained benzene, let alone at levels in certain Products that are many multiples

of the emergency, interim limit set by the FDA.  To the contrary, Defendant represented and

warranted, expressly and impliedly, that the Products were of merchantable quality, complied

with federal and state law, and did not contain carcinogens, reproductive toxins, or other

impurities such as benzene.

13.    If Defendant had fulfilled its quality assurance obligations, Defendant would have

identified the presence of the benzene contaminant almost immediately.

14.    Further, had Defendant adequately tested its Products for benzene and other

carcinogens, reproductive toxins, and impurities, it would have discovered that its Products

contained benzene at levels above the FDA's limit (to the extent even applicable), making those

products ineligible for distribution, marketing, and sale.

15.    Instead, Defendant introduced contaminated, adulterated, and/or misbranded

Products containing dangerous amounts of benzene into the U.S. market.

16.    Defendant also knew or should have known about the carcinogenic potential of

benzene because it is classified as a Group 1 compound by the WHO and the IARC, meaning

that it is "carcinogenic to humans."

17.    The presence of benzene renders the Products both adulterated and misbranded

under the FDCA because benzene is a substance that makes the Products harmful to consumers

under customary conditions of use.

18.    Further, the Products are misbranded because their labeling is "false" and

"misleading" because it does not disclose the presence of benzene, even though a warning

statement concerning benzene is necessary or appropriate to prevent a health hazard.  21 C.F.R. §

740.1(a).

5

19.     Under federal law, a product that is "adulterated" or "misbranded" cannot legally be manufactured, advertised, distributed, or sold.  21 U.S.C. § 331(a).  Adulterated and misbranded products thus have no economic value and are legally worthless.  Notably, Plaintiff does not bring claims under the FDCA and does not seek to enforce federal law in this lawsuit. Instead, Plaintiff brings state law causes of action that arise regardless of the Products' classification under the FDCA.  That the Products are in fact adulterated and misbranded simply underscores the unmerchantable nature of the Products.

20.     When Plaintiff purchased Defendant's Products, Plaintiff did not know, and had no reason to know, that Defendant's Products were contaminated with benzene, adulterated and misbranded, and thus unlawful to sell or purchase as set forth herein.  Not only would Plaintiff not have purchased Defendant's Products at all had she known the Products contained benzene, she would not have been capable of purchasing them if Defendant had done as the law required and tested those products for benzene and other carcinogens, reproductive toxins, and impurities.

21.     Moreover, no reasonable consumer would have paid any amount for products containing benzene, a known carcinogen and reproductive toxin, much less above the limits set by the FDA (even assuming those allowances apply to Defendant's products).

22.     Thus, if Plaintiff and Class members had been informed that Defendant's Products contained or may contain benzene, they would not have purchased or used the Products at all, or would have paid significantly less for the Products, making such omitted facts material to them.

23.     Plaintiff and Class members were injured by the full purchase price of the Products because the Products are worthless, as they are adulterated and contain harmful levels of benzene.  Such illegally sold products are worthless and have no value.  *See Debernardis v. IQ*

*Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019); *see also In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2021 WL 222776, at *16 (D.N.J. Jan. 22, 2021) ("This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure.  Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for.").

24.     Plaintiff and Class members bargained for Products free of contaminants and dangerous substances, and were deprived the basis of their bargain when Defendant sold them products containing the dangerous substance benzene, which rendered the Products unmerchantable and unfit for use.

25.     Plaintiff and Class members are further entitled to damages for the monies paid to purchase the Products, statutory and punitive damages, attorneys' fees and costs, and restitution.

26.     Plaintiff brings this action on behalf of herself and the Class for equitable relief and to recover damages and restitution for: (i) breach of implied warranty; (ii) unjust enrichment; (iii) violation of New York General Business Law ("GBL") § 349; and (iv) violation of GBL § 350.

## PARTIES

27.     Plaintiff Jasmine Lerner is a resident of Brooklyn, New York and has an intent to remain there, and is therefore a domiciliary of New York.  In or around June 2019, Ms. Lerner purchased Defendant's After-Sun Aloe Vera Soothing Spray from a CVS location in New York, New York.  When purchasing the Product, Ms. Lerner reviewed the accompanying labels and disclosures, and understood them as representations and warranties by the manufacturer that the

Product was properly manufactured, free from defects, safe for its intended use, not adulterated or misbranded, and legal to sell. Ms. Lerner relied on these representations and warranties in deciding to purchase the Product manufactured by Defendant, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Product from Defendant if she had known that it was not, in fact, properly manufactured, free from defects, safe for its intended use, adulterated and misbranded, and legal to sell. The Product Plaintiff purchased was contaminated with benzene, therefore rendering it improperly manufactured, defective, not safe for its intended use, adulterated and misbranded, and illegal to sell.

28.     Defendant CVS Health Corporation is a corporation organized under the laws of the State of Rhode Island and Providence Plantations and maintains its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant sold the contaminated Products at its retail locations and online in the state of New York and nationwide.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

30.     This Court has personal jurisdiction over Defendant because Plaintiff purchased the Products in this District.

31.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because it is the District in which a substantial part of the events or omissions giving rise to the claim occurred.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class").

33.     Plaintiff also seeks to represent a subclass of all Class members who purchased the Products in New York (the "Subclass").

34.     The Class and New York Subclass are collectively referred to as the "Classes."

35.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be expanded or narrowed by amendment to the complaint or narrowed at class certification.

36.     Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

37.     **Numerosity.**  The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Classes. Although the precise number of proposed members are unknown to Plaintiff, the true number of members of the Classes are known by Defendant.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

38.     **Typicality.**  The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all members of the Classes, purchased the

Products, which were worthless due to the presence of benzene, a harmful and carcinogenic chemical impurity.  Plaintiff has been damaged by Defendant's misconduct in the very same way as the members of the Classes.  Further, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

39.  **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions include, but are not limited to, the following:

    (a)   whether the Products manufactured by Defendant contain dangerously high levels of benzene;

    (b)   whether Defendant is liable to Plaintiff and the Classes for unjust enrichment;

    (c)   whether the Products were unmerchantable and unfit for their intended use;

    (d)   whether Plaintiff and the Classes have sustained monetary loss and the proper measure of that loss;

    (e)   whether Plaintiff and the Classes are entitled to restitution and disgorgement from Defendant; and

    (f)   whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive.

40.  **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained counsel who are highly experienced in complex

consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Plaintiff has no interests that are antagonistic to those of the Classes.

41.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

42.     In the alternative, the Classes may be certified because:

(a)     the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual members of the Classes that would establish incompatible standards of conduct for the Defendant;

(b)     the prosecution of separate actions by individual members of the Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate

final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Breach of Implied Warranty**
**(On Behalf Of Plaintiff And The Nationwide Class And New York Subclass)**

43.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

44.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

45.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Products (i) would not contain elevated levels of benzene and (ii) are generally recognized as safe for human use.

46.     Defendant breached the warranty implied in the contract for the sale of the defective Products because they could not pass without objection in the trade under the contract description, the Products were not of fair or average quality within the description, and the Products were unfit for their intended and ordinary purpose because the Products manufactured, distributed, and sold by Defendant were defective in that they contained elevated levels of carcinogenic and toxic benzene, and as such are not generally recognized as safe for human use. As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

47.     Plaintiff and members of the Classes purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

48.     The Products were not altered by Plaintiff or members of the Classes.

49.     The Products were defective when they left the exclusive control of Defendant.

12

50.     Defendant knew that the Products would be purchased and used without additional testing by Plaintiff and members of the Classes.

51.     The Products were defectively manufactured and unfit for their intended purpose, and Plaintiff and members of the Classes did not receive the goods as warranted.

52.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained harmful levels of benzene and are not generally recognized as safe for human use; and (b) the Products do not have the characteristics, ingredients, uses, or benefits as promised by Defendant.

53.     On February 3, 2022, prior to filing this action, Defendant was served with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising Defendant that it breached an implied warranty and demanded that Defendant make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

**COUNT II**
**Unjust Enrichment**
**(On Behalf Of Plaintiff And The Nationwide Class And New York Subclass)**

54.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

55.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

56.     Plaintiff and Class members conferred benefits directly on Defendant by purchasing the Products, and Defendant unjustly and inequitably retained the benefits because it

13

retained profits and the revenue from the sale of the Products even though the Products cannot be used for their principal intended purpose and are worthless due to the presence of benzene.

57.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products were unfit for use as after-sun aloe vera products, or that the Defect was substantially likely to manifest through the customary and intended use of the Products.  These omissions caused injuries to Plaintiff and Class members because they would not have purchased the Products if the true facts were known.

58.     Retention of those moneys also is unjust and inequitable because Defendant knows the Products are defective and has withdrawn them from the market, but has not provided a refund to Plaintiff or members of the Classes.

59.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution and other relief to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

### COUNT III
**Violation Of New York's General Business Law § 349**
**(On Behalf Of Plaintiff And The New York Subclass)**

60.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiff brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

62.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

14

63.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

64.     Plaintiff and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

65.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, representing that the Products were after-sun aloe vera Products that could be used for those purposes, and by failing to disclose the presence of benzene in the Products.

66.     The foregoing deceptive acts and practices were directed at consumers.

67.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Products to induce consumers to purchase same.  Defendant's omissions of fact were material because if Plaintiff and members of the New York Subclass were apprised of the true nature of the Products, namely that the Products contained benzene and were unsafe and unfit for use, they would have been aware of that fact and would not have purchased the Products.

68.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

69.     Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and consumed Defendant's products.

70.     As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Products on the

same terms if they knew that the Products contained benzene, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products could not be used as after-sun aloe vera products; (c) they paid a price premium for the Products due to Defendant's omission of the fact that the Products contained benzene and the misrepresentations that the Products could be used as after-sun aloe vera products; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

71.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT IV**
**Violation Of New York's General Business Law § 350**
**(On Behalf Of Plaintiff And The New York Subclass)**

72.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

73.     Plaintiff brings this claim individually and on behalf of the proposed New York Subclass against Defendant.

74.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

75.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

76.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

77.     Defendant engaged in a material misrepresentation by representing that the Products were after-sun aloe vera Products that were fit for their intended use and contained only the active ingredients stated on the label.  Defendant materially omitted the true facts regarding the Products, namely that they contained benzene and were unsafe and unfit for their intended use.

78.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are directed to consumers.

79.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

80.     Defendant's false, misleading, and deceptive statements and representations of fact and omissions have resulted in consumer injury or harm to the public interest.

81.     As a result of Defendant's false, misleading, and deceptive statements and representations of fact and omissions, Plaintiff and the New York Subclass have suffered economic injury because the Products were worthless and Plaintiff and the New York Subclass paid a price premium for the Products in the amount of the full purchase price of the Products.

82.     As a result of Defendant's violations, Plaintiff and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Products on the same terms if they knew that the Products contained benzene, and are not generally recognized as safe; (b) they would not have purchased the Products or would not have purchased them on the same terms if they knew that the Products could not be used as after-sun aloe vera products; (c) they paid a price premium for the Products due to Defendant's omission of the fact that the Products contained benzene and the misrepresentations that the Products could be used as after-

17

sun aloe vera products; and (d) the Products do not have the characteristics, ingredients, uses, benefits, or quantities as promised.

83.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.     For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.     For pre-judgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of monetary relief;

g.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.


Dated: February 4, 2022                    Respectfully submitted,

                                           **BURSOR & FISHER, P.A.**

                                           By: _____/s/ Andrew J. Obergfell_____
                                                   Andrew J. Obergfell

                                           Andrew J. Obergfell
                                           888 Seventh Avenue
                                           New York, NY 10019
                                           Telephone: (646) 837-7150
                                           Facsimile: (212) 989-9163
                                           E-Mail:  aobergfell@bursor.com

                                           *Attorneys for Plaintiff*